SUCCESSION OF WILLIAM PLUNKETT—On opposition of PERKINS, CAMP-
BELL & Co. and of W. B. McDANIEL.

Where the heirs have authorized the curator to settle up the affairs of the estate out of court, they
have no reason to invoke the penal statute of 1837 against the curator.
The allegation by the curator that there was another heir in existence besides those whose authori-
ty he had, will not render his former acts unlawful, and subject him to the penalty of the sta-
tute.
Where a succession is accepted by the heirs purely and simply, the credits belonging to the succes-
sion are *ipso facto* and of full right by operation of law divided among the heirs.
Compensation takes place between a debtor of the succession and a creditor of one of the heirs, to
the extent of the portion of such heir in the debt due to the succession by the individual creditor
of such heir, and the heir cannot defeat the compensation by a transfer of his interest in the
succession to a third person.
A creditor of the succession has the means of preventing the injurious effects of the compensation
as between the heirs and the debtor of the succession, by demanding a separation of patrimony,
by taking out letters of administration in proper time, or by enforcing the collection of his claim
against the administrator or executor already appointed.

APPEAL from the Second District Court of New Orleans, *Morgan*, J.
*Benjamin, Bradford & Finney*, and *Eager & Dupuy*, for opponents and
appellants.    *George L. Bright* and *W. Christy*, for curator and appellee.

MERRICK, C. J.   *Perkins, Campbell & Co.*, assignees of the interest of *Jo-
seph Plunkett*, as heir to one-half of his father's succession, opposed the item
of $1,557 71, alleged in the account of the curator to have been paid by him
to *H. R. W. Hill*, on account of a debt due him by said *Joseph*.

The ground of the opposition is, that the alleged payment was made after
notice to the curator of the assignment of *Joseph Plunkett's* interest in his
father's succession to the opponents.

Twenty per cent. interest is also claimed under the Statute of 1837.

The heirs (and those deriving rights from them and standing in their shoes)
having authorized the curator to settle up the estate out of court, have no rea-
son to invoke the penal statute, the violation of which they have induced.

It is clearly established :

1st. That the heirs, by an act under private signature, regulating the mode
of partition of the estate between themselves, withholding certain property
from sale and partitioning the slaves, authorized the curator to settle up the
claims as soon as practicable, designating, in part, the manner in which he
should act by recognizing a certain debt of $1,000 against the estate.

2d. That the heirs verbally authorized the curator, in order to save expense,
to take the affairs of the estate out of court and to settle up the same.

3d. That *William* and *Joseph Plunkett* authorized the curator, besides set-
tling up the estate to pay their individual debts.

But it is said, as the curator afterwards denied in his proceedings, that these
persons were the heirs, or sole heirs of the deceased, he is estopped now from
saying that he administered under their directions as heirs.   In our opinion,
this is an incorrect application of the doctrine of estoppels ; for the plaintiffs
cannot recover, except they are heirs, or have the rights of heirs, and it is
much more logical to hold that they themselves are estopped from asserting

that they were not heirs when they authorized the acts of the curator than the contrary. Moreover, in the act referred to, partitioning certain property, the heirs say, that they are all the "known" heirs of the deceased, and the curator, in his answer, merely alleges that he has discovered that there is another, a fourth heir. By this answer, he does not make his former lawful acts unlawful. We see no reason, therefore, to inflict the penalties of the Act of 1837 upon the curator, for the benefit of parties who, through their authors, are *in pari delicto*.

In regard to the correctness or incorrectness of the decision of the lower court in allowing compensation to diminish the portion of the *Hill* debt coming to *Joseph Plunkett*, we are of opinion that the lower court did not err. The indebtedness of *Hill*, personally, to the estate, was, exclusive of interest, $3,323 36. The one-half of *Joseph Plunkett*, as allowed him by the agreement of the co-heirs in their partition, was more than sufficient to discharge the debt due by *Joseph Plunkett* to *Hill*.

Did such compensation take place ? If it did, the subsequent settlement by a curator as the agent of the heirs in conformity to law, cannot operate to the prejudice of the curator ; for the whole theory of this branch of the law rests upon the tacit regulation of accounts as to debtor and creditor between the parties. 7 Toul. No. 343.

If *Joseph Plunkett*, therefore, was the creditor of *Hill* for one-half of $3,323 36, the $1,557 71 which *Hill* owed him, was compensated, and could not be collected, for it is evident that *Joseph Plunkett's* assignee could have no greater right than he himself had. Then *Hill* could not equitably have been compelled to pay to *Joseph* the whole debt without deducting the amount due by him to the former, nor could the latter have deprived *Hill* of his plea in compensation by a transfer of his interest in the succession, and *Perkins, Campbell & Co.* do not stand in a more favorable position to the estate, than their vendor. *Dees* v. *Tildon*, 2 An. 414.

Now, by the death of *William Plunkett, Senior*, and by the acceptance of his heirs purely and simply, the credits belonging to his succession were *ipso facto*, and of full right, by operation of law, divided among his heirs. C. C. 2107 ; 6 Toul. No. 752. The principle of law upon which divisibility of debts reposes is said, by the author just cited, to be as ancient as the twelve tables.

He illustrates the manner in which the division takes place as follows, viz:

No. 753. " Il en résulte que si le créancier et le débiteur ont l'un et l'autre laissé plusieurs héritiers, chacun des héritiers du premier ne pourra demander à chacun des héritiers du second que sa portion dans la dette de celui-ci. Supposons la dette de 8,000 fr. Le créancier et le débiteur meurent laissant, chacun quatre héritiers. La créance de chacun des héritiers du premier, la dette de chacun des héritiers du second est de 2,000 fr. ; mais chacun des créanciers ne peut demander à chacun des débitieurs, et chacun des débitieurs ne peut payer à chacun des créanciers, que le quart de sa dette, c'est-à-dire 500 fr., et non 2,000 fr., car cette dette se divise de plein droit contre les quatre héritiers du créancier primitif." See also Pothier on Ob., No. 300.

The reciprocal relationship of debtor and creditor existed therefore between *Joseph Plunkett* and *Hill*, unless there was something in the relation in which *Joseph Plunkett* stood towards the succession which prevented the operation of compensation. We find nothing of the kind in the record. On the contra-

KEAN
v.
HABER.

ry, the heirs had accepted the succession purely and simply by authorizing the curator to settle the estate under their power of attorney, and more especially by making a partition of the slaves among themselves. C. C. 982, 1180. They are, therefore, forever precluded from saying they were not heirs; that all legal consequences did not flow from their acceptance of the succession, and that compensation as one of those consequences has not actually taken place. C. C. 2203.

Toullier, in another place says: "The heir represents the person of the deceased. He is, at the opening of the succession, seized of all of his rights, active or passive, which are then confounded in his person, if he is the only heir, and for his virile share, if there are several.

"The compensation of that which is due to the intestate, with that which is due by the heir, or to the heir, takes effect of *pleno juro* at the instant of the death, the period to which the acceptance of the inheritance always refers." 7 Toul., No. 380.

This doctrine was sanctioned by the Supreme Court in the case of *Martin's Heirs* v. *Overton*, (1 N. S. 586,) and *Buard* v. *Buard's Heirs*. 5 N. S., 135.

We think therefore, that the judgment should not only, not be reversed as against the curator, but that it ought to be amended in his favor, so as to relieve him of the twenty per cent. interest decreed against him.

The creditor of a succession has the means of preventing the injurious effect of the compensation as between the heir and the debtor of the succession by demanding a separation of patrimony, by taking out titles of administration or curatorship in proper time, or by enforcing the collection of his claims against the administrator, curator or executor, already appointed. C. C., 1397, 1403.

It is, therefore, ordered, adjudged and decreed, by the court, that the judgment of the lower court be so amended as also to relieve and exonerate the said *William Christy*, curator, from the payment of twenty per cent. interest upon the sum of $3,169 10, from the 29th day of June, 1856, therein decreed, and that said judgment, so amended, be affirmed, the appellants paying the costs of the appeal.